UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WISCONSIN VOTERS ALLIANCE, et al.

Case No. 1:20-cv-01487-WCG

Plaintiff,

v.

CITY OF RACINE, et al.

Defendant.

### DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF
### JOINT MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)1

Defendants City of Racine, City of Milwaukee, City of Kenosha, City of Green Bay, and City of Madison, by their attorneys, submit the following Brief in Support of their Joint Motion to Dismiss Pursuant to Federal Rule 12(b)1.

### INTRODUCTION

Plaintiffs lack standing to bring this suit, therefore the case should be dismissed. Plaintiffs lack standing in a number of different ways. First, their alleged injuries are highly speculative. Also, they have not shown that the Cities' acceptance of grant funds is causally connected to these alleged injuries. Further, neither a declaratory judgment nor a preliminary injunction is likely to redress Plaintiffs' alleged injuries. Lastly, Plaintiffs cannot bring this suit as they lack a private cause of action. Accordingly, this action should be dismissed with prejudice.

1

## ARGUMENT

**I.    Plaintiffs Do Not Have Standing to Seek Relief in Federal Court**

Before Plaintiffs can invoke this Court's authority to issue injunctive relief, the Court must first establish that it has jurisdiction—in other words, whether this action presents a "Case" or "Controversy" under Article III of the Constitution. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94-95, 118 S. Ct. 1003 (1998). One component of the case-or-controversy requirement is standing, which requires a plaintiff to show (1) that he has suffered an injury in fact; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992) (citations omitted). Because these elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* at 561 (citations omitted).

Plaintiffs are alleged to be eligible voters residing in each of the five (5) defendant cities and the Wisconsin Voter's Alliance, a non-profit corporation working to protect the rights of its members, including the individual Plaintiffs, "whenever . . . government actions [ ] threaten or impede implied or expressed rights or privileges afforded to [its members] under our constitutions or laws or both." (Compl. ¶ 4.) Plaintiffs' arguments fail to satisfy any of the three showings required to demonstrate standing, however.

**A.    Plaintiffs Fail To Establish an Injury-In-Fact**

The first element of standing is an injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 505 U.S. at 560 (internal quotations and citations omitted). An injury cannot be a "generally available grievance about the conduct of government." *Gill v.*

2

*Whitford*, 138 S. Ct. 1916, 1923 (2018). Rather, Plaintiffs must establish they have a personal stake in the outcome of the controversy. *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691 (1962)). Additionally, the injury must be "certainly impending"; future injury that is speculative or merely possible is not sufficient to establish Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138 (2013).

Plaintiffs state that they will be injured by the Cities' acceptance and use of the CTCL grants because such acceptance will "skew the outcome of an election in an urban city of a favored demographic group," thereby "skew[ing] the neutrality of an election." (TRO Memo at 27-28.) They further allege that, "[o]nce the November election occurs, the damage to plaintiffs' favored non-progressive candidates will be complete." (*Id.* at 28). In other words, Plaintiffs' alleged injuries are based entirely on their speculation regarding what the outcome of the election *could* be in the future. They have failed to demonstrate that any such injury is "certainly impending," and therefore cannot demonstrate an injury in fact for standing purposes. *Clapper*, 568 U.S. at 409.

Underlying all of Plaintiffs' assertions is the allegation that the various laws cited in both the Complaint and the TRO Memorandum have not been followed. Just as speculation that progressive candidates may win an election does not constitute an injury in fact, *id.*, a general allegation that laws have not been followed is likewise insufficient. As the Supreme Court has explained:

> We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lance v. Coffman*, 549 U.S. 437, 439, 127 S. Ct. 1194 (2007) (per curium) (quoting *Lujan*, 504 U.S. at 560-61). Here, Plaintiffs have not distinguished themselves from any other voter(s) who do not support the candidates Plaintiffs assume will win in the upcoming elections. They have

not—and cannot—identified relief that would provide a direct and tangible benefit to themselves that would not also inure to the public at large; their generally available grievance about government therefore does not provide the requisite showing to satisfy the injury-in-fact requirement of Article III standing.

> **B. Plaintiffs Cannot Establish a Causal Connection between Their Alleged Injury and the Cities' Use of CTCL Grant Funds**

Plaintiffs similarly cannot satisfy the second prong of Article III standing: demonstrating a causal connection between the Cities' acceptance and utilization of CTCL grant funds and the Plaintiffs' alleged harm. To make the requisite showing under this second prong, plaintiffs must demonstrate that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 US at 560 (alteration original; citation omitted). Here, Plaintiffs allege that they will be injured by the Cities accepting and using grant funds from CTCL, ostensibly asserting that the Cities are somehow influencing the outcome of the November election in favor of "progressive" candidates by providing more and safer access to voting in their respective cities in the midst of a dangerous pandemic.

Even attempting to trace the purported cause—the Cities' acceptance and use of grant funds from CTCL—to the alleged injury—"non-progressive" candidates losing elections—would require the Court to rely on unfounded conjecture from Plaintiffs, and to speculate as to the future independent actions of third parties: to wit, the voters. For example, Plaintiffs assume that the Cities' acceptance and use of CTCL grant funds will change the makeup of the electorate in the Cities, only benefit progressive voters, and result in a significant number of progressive individuals voting in this election when they otherwise would not have done so. However, these unsupported claims ignore the reality of the situation. The Cities have used the funds received from CTCL to

4

ensure the safety of *all* voters—not just progressive ones—in the midst of the COVID-19 pandemic, including for purposes such as buying personal protective equipment and sanitizing and cleaning products, educating voters about safe voting options, providing poll workers with hazard pay, and funding increased cleaning and sanitizing of polling places. These efforts have been uniform, and have not targeted any demographic over any others.

Plaintiffs' causation argument is also tethered to its assertion that CTCL is a partisan organization that is only giving grant funds to municipalities in areas that are likely to favor progressive candidates. As discussed in detail in Defendants' Joint Memorandum in opposition to Plaintiff's Motion for a Temporary Restraining Order, however, CTCL has given grants to 111 municipalities across the State of Wisconsin, in many of which more votes were cast for Donald Trump than Hillary Clinton in 2016.[1] (*See* Decl. of Lindsay J. Mather Ex. A.) Furthermore, as Plaintiffs themselves acknowledge, any jurisdiction is eligible to apply for grants from CTCL, and CTCL's criteria for distributing the grants, and their intended uses, are nonpartisan. (Compl. ¶¶ 47-53; TRO Memo 4-6.) Thus, the Cities' acceptance of CTCL grant funds cannot "skew" the election unless either less-"progressive" jurisdictions fail to apply for the grants despite their eligibility, or other jurisdictions do apply, and CTCL rejects them despite its stated eligibility criteria. In either case, Plaintiffs' alleged injury cannot be traced to the Cities' decisions to accept grants from CTCL; rather, the claimed harm would be "th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (alterations original).

In sum, even if Plaintiffs could demonstrate that they have suffered an injury in fact, they do not come close to supporting the assertion that such injury is "fairly traceable" to the Cities' acceptance of the CTCL grants. Plaintiffs cannot satisfy the second prong of the standing analysis.

---

[1] Various municipalities in Waukesha County, for example, have received CTCL grant funds. (Mather Decl. Ex. D.) In the 2016 election, voters in Waukesha County cast nearly twice as many votes for Trump (142,543) as for Clinton (79,224). (*Id.* at Ex. E.)

5

**C. Neither a Declaratory Judgment Nor An Injunction Is Likely to Redress Plaintiffs' Alleged Injury.**

The third element of the standing inquiry requires a plaintiff to demonstrate that it is likely, and not merely speculative, that his injury will be redressed by a decision in his favor. *Lujan*, 504 U.S. at 561. Here, Plaintiffs claim that the Cities' use of CTCL grant funds will injure them by "skew[ing] the outcome" of the November election, (TRO Memo at 27), leading to "close elections [being] lost by plaintiffs' favored candidates." (*Id.* at 14.) Plaintiffs therefore ask the Court for prospective declaratory and injunctive relief to enjoin the Cities from using grant funds from CTCL. (Compl. ¶ 108.) Importantly, however, Plaintiffs do not limit their objections to the expenditure of CTCL grant funds *going forward*, they take issue with the Cities spending *any* funds obtained through grants from CTCL. (Compl.)

Under Plaintiffs' proffered theory, in order to conclude that prospective injunctive relief would redress Plaintiffs' alleged injury, the Court would have to engage in significant conjecture— to wit, that the efforts undertaken by the Cities using CTCL grant funds to date have not been sufficient to "skew" the election, but the future expenditure of such funds is likely to do so, such that an injunction would redress Plaintiffs' alleged injury. The validity of such an assumption is thoroughly unascertainable. The law governing Article III standing requires that Plaintiffs demonstrate that the relief sought is "likely, as opposed to merely speculative." *Lujan*, 504 U.S. at 561 (internal quotations and citation omitted). Both Plaintiffs' alleged injury, and their requested method of redress for said injury, are primarily speculative. Accordingly, Plaintiffs have altogether failed to make the required showing.

For the foregoing reasons, Plaintiffs have failed to meet their burden with respect to establishing any of the three elements of Article III standing. Accordingly, they cannot invoke the Court's judicial power to grant injunctive relief.

## II. Plaintiffs Have No Private Cause of Action

Plaintiffs assert they have standing under the Supremacy Clause of the U.S. Constitution, which, they argue, confers upon voters the right to sue state and local governments based on election policies and customs that allegedly violate federal election law. (Compl. ¶ 17; TRO Memo 12.) Plaintiffs also claim the Help America Vote Act, Pub. L. 107-252, Title III, § 302, 116 Stat. 1706 (codified at 42 U.S.C. § 15301, et seq.) ("HAVA"), confers a private cause of action upon them because they fall into the category of "any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur)." (Compl. ¶ 18 (quoting 52 U.S.C. § 21112(a)(2)(B)).) Plaintiffs attempt to conflate two distinct concepts: standing and the existence of a private cause of action. Yet their arguments concerning the latter are no more compelling than those regarding the former.

Plaintiffs argue that the Supremacy Clause of the United States Constitution, Article VI, clause 2, provides an implied right of action to enforce federal election laws. (Compl. ¶ 17; TRO Memo 11-12). In support of this proposition, Plaintiffs cite a single decision from the Ohio federal district court decision in 2004, *League of Women Voters v. Blackwell*, in which the plaintiffs alleged that two directives from the Ohio Secretary of State violated HAVA. 340 F. Supp. 2d 823 (N.D. Ohio 2004). While the *Blackwell* court deemed the Supremacy Clause both a potential cause of action and a source of federal jurisdiction for the plaintiffs, the case upon which it primarily relied in doing so did not address that point directly. *Blackwell*, 340 F.Supp.2d 823, 827 (citing *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002)) ("*Verizon* did not did not speak to the question of whether the Supremacy Clause created a cause of action as well as a grant of jurisdiction . . ."). Further, the district court dismissed the plaintiffs' complaint on other grounds, leaving its Supremacy Clause holding untested on appeal. As of this writing, the Cities are aware of no other court has adopted its approach on this issue in a voting-related case.

7

Plaintiffs also maintain that HAVA "confers upon them a private cause of action and legal standing." (TRO Memo 13; *see also* Compl., ¶ 17). This is because, Plaintiffs claim, Wisconsin law fails to provide them with a HAVA-mandated "appropriate remedy" via the administrative review process set forth in Wisconsin Statutes section 5.061, which the Plaintiffs deem a "slow boat to China." (Compl., ¶¶ 21-22; *see also* TRO Memo 13-14). The Plaintiffs cite to no legal authority for the proposition that the State of Wisconsin's administrative review process is inadequate to comply with HAVA's requirements. This is unsurprising, since both HAVA's text and the case law discussing a HAVA private right of action undermine their position.

As the First Circuit explained in *Colon-Marrero v. Velez*, 813 F.3d 1, 15 (1st Cir. 2016), "HAVA by its terms does not create a private right of action," but instead provides two alternative enforcement mechanisms: a civil action brought by the Attorney General, or state-based administrative procedures. Plaintiffs complain that Wisconsin's administrative procedure is inadequate because it relies on the Wisconsin Attorney General or a county district attorney to pursue an enforcement action, per Wis. Stat. § 5.07. Yet Wisconsin's process only mirrors the alternative federal process, which *also* places the impetus for enforcement on the government—in this instance, the U.S. Attorney General—and not on not private citizens. Because Wisconsin's statutory scheme thus mirrors the alternative federal approach under HAVA, Plaintiffs' protestations that Wisconsin's administrative process is inadequate under HAVA ring false.

Plaintiffs might, upon examining *Colon-Marrero* or other federal precedents, protest that those cases *do* support a private HAVA cause of action for individual citizens. In a general sense, they would be correct—but with one important qualifier. As the *Colon-Marrero* court explained, the HAVA private cause of action must "be asserted through the vehicle of a private lawsuit brought under § 1983." 813 F.3d 1, 22. The Plaintiffs have not asserted Section 1983 claims in this

8

case and, therefore, may not pursue their HAVA claims as private citizens outside the federal or Wisconsin statutory enforcement mechanisms.

## CONCLUSION

For these reasons, Defendants respectfully request the Court grant their Joint Motion to Dismiss, and dismiss this action with prejudice.

Dated at Kenosha, Wisconsin, this 9th day of October, 2020.

    s/ Vanessa R. Chavez
Vanessa R. Chavez (State Bar No. 1103015)
Lindsay J. Mather (State Bar No. 1086849)
*Attorneys for Defendant, City of Green Bay*
CITY OF GREEN BAY
100 N. Jefferson Street, Room 200
Green Bay, WI 54301
Telephone: (920) 448-3080
Facsimile: (920) 448-3081
Vanessa.Chavez@greenbaywi.gov
Lindsay.Mather@greenbaywi.gov


s/ Bryan A. Charbogian
Bryan A. Charbogian (State Bar No. 1113801)
Edward R. Antaramian (State Bar No. 1019160)
Christine M. Genthner (State Bar No. 1000608)
*Attorneys for Defendant, City of Kenosha*
CITY OF KENOSHA
Kenosha City Attorney's Office
625 52nd Street
Kenosha, WI 53140-3480
Telephone: (262) 653-4170
Facsimile: (262) 925-5933
eantaramian@kenosha.org
cgenthner@kenosha.org
bcharbogian@kenosha.org

s/ Michael R. Haas
Michael R. Haas (State Bar No. 1020889)
Patricia A. Lauten (State Bar No. 1030520)
Steven C. Brist (State Bar No. 1005479)
*Attorneys for Defendant, City of Madison*
CITY OF MADISON
Office of the City Attorney
City-County Building, Room 401
210 Martin Luther King, Jr. Boulevard
Madison, WI 53703-3345
Telephone: (608) 266-4511
Facsimile: (608) 267-8715
mhaas@cityofmadison.com
plauten@cityofmadison.com
sbrist@cityofmadison.com


s/ Scott R. Letteney
Scott R. Letteney (State Bar No. 1000559)
*Attorney for Defendant, City of Racine*
CITY OF RACINE
730 Washington Avenue, Room 201
Racine, WI 53403
Telephone: (262) 636-9115
Facsimile: (262) 636-9570
scott.letteney@cityofracine.org


s/ Kathryn Z. Block
Kathryn Z. Block (State Bar No. 1029749)
James M. Carroll (State Bar No. 1068910)
*Attorneys for Defendant, City of Milwaukee*
CITY OF MILWAUKEE
Milwaukee City Attorney's Office
200 E. Wells Street, Room 800
Milwaukee, WI 53202-3515
Telephone: (414) 286-2601
Facsimile: (414) 286-8550
kblock@milwaukee.gov
*jmcarr@milwaukee.gov*

10